IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 19-cv-03630-NYW

RONALD KELLY AND
SHELLI KELLY,
    Plaintiffs

V.

UNITED STATES OF AMERICA,
    Defendant

**PLAINTIFFS' MOTION TO STRIKE CERTAIN EXPERT TESTIMONY OF RICHARD D. SCOTT, M.D., PURSUANT TO FEDERAL RULE OF EVIDENCE 702**

COME NOW Plaintiffs Ronald Kelly and Shelli Kelly, by and through their attorneys, Martin Law Firm, LLC, and hereby submit their Motion to Strike Certain Expert Testimony of Richard Scott, M.D. under Federal Rule of Evidence 702.

**D.C.COLO.LCivR 7.1(a) CERTIFICATION**

Undersigned counsel certifies under D.C.COLO.LCivR 7.1(a) that he conferred with counsel for Defendant, and counsel for Defendant stated that the United States opposes the requested relief.

**INTRODUCTORY SUMMARY**

Plaintiffs move the Court to strike two types of expert opinions offered by Defendant's expert witness Richard Scott, M.D. Dr. Scott is an orthopedic surgeon apparently disclosed by Defendant to attempt to support the Non-Party at Fault Designations of orthopedic providers Dr. Kelly Sanderford and PA Michelle Remley.

First, Dr. Scott, as an orthopedic surgeon, is not substantially familiar with applicable standards of care and practice relating to a family medicine physician managing a patient's

postoperative anticoagulation medication "bridge therapy." Under Colo. Rev. Stat. § 13-64-401, no person may "be qualified to testify as an expert witness concerning issues of negligence in any medical malpractice action or proceeding against a physician unless he not only is a licensed physician but can demonstrate by competent evidence that … he was substantially familiar with applicable standards of care and practice as they relate to the act or omission which is the subject of the claim on the date of the incident." As Dr. Scott is an orthopedic surgeon not "substantially familiar with applicable standards of care and practice" of a family medicine physician monitoring and managing postoperative "bridge therapy," he should not be allowed to opine on "issues of negligence" regarding the medical providers' bridge therapy or anticoagulation regimen at Sunrise Community Health.

Second, Colorado's Corporate Practice of Medicine Doctrine, codified at Colo. Rev. Stat. § 12-240-138, prohibits a medical business entity from owing a medical duty to care for a patient – only the licensed provider may practice medicine and owe a medical duty to a patient. Yet Dr. Scott's report seeks to generally cast blame on the "Orthopaedic office" or "Orthopaedic team," when the Colorado statute specifically disclaims that an "Orthopaedic office" or "Orthopaedic team" could owe a duty to a patient. Colorado's Corporate Practice of Medicine Doctrine makes clear that a business entity may not practice medicine and may not *owe a medical duty* to the patient to assume any medical responsibilities that its physicians fail to fulfill. Because an "Orthopaedic office" or "Orthopaedic team" <u>cannot</u> owe a duty of care under Colorado law, the Court must preclude Dr. Scott from offering standard of care opinions against the business entity.

## **INTRODUCTION**

This is a medical malpractice action under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. § 2671 *et al.* This case arises from the postoperative management of Plaintiff Ronald

2

Kelly's "bridge therapy" (involving anticoagulation medications), by the medical providers at the Sunrise Community Health system, a Federally Qualified Health Center. Plaintiff Ronald Kelly has a mechanical heart valve, which requires him to take the anticoagulant medication, Coumadin, for life. Plaintiff Ronald Kelly underwent a total knee replacement surgery in June 2017. Because of potential bleeding risks, the Coumadin had to be stopped prior to the surgery. To restart the Coumadin after the surgery and to reach a therapeutic Coumadin dose, a medical technique known as "bridge therapy" was utilized. In "bridge therapy" another anticoagulation medication, Lovenox, is administered postoperatively to a patient along with restarting the Coumadin. The Lovenox is then stopped when the Coumadin reaches a therapeutic level.

However, the combination of the two anticoagulant medications being administered at the same time greatly increases the risk of postoperative bleeding. Therefore, close monitoring and management of the clotting times (using a blood test known as INR) and the Coumadin dose are required. Plaintiffs Ronald Kelly and his wife Shelli specifically contend two family medicine physicians at the Sunrise clinic, Samuel Davis, MD and Sean Filipovitz, MD, negligently failed to appropriately monitor and manage Plaintiff Ronald Kelly's bridge therapy following his surgery. As a result, Plaintiff Ronald Kelly remained on the two anticoagulant medications for an inappropriate and excessive time following the surgery. This caused him to suffer abnormal and excessive bleeding, infection, the need for subsequent surgeries, and related damages.

On September 1, 2020, Defendant filed its Amended Designation of Non-Parties at Fault pursuant to Colorado's § 13-21-111.5(3)(b), identifying three nonparties:

> Accordingly, pursuant to C.R.S. § 13-21-111.5(3)(b), Defendant designates the following non-parties potentially at fault: (1) Dr. Kelly R. Sanderford, MD, and Michelle Lynn Remley, PA, Banner Health Clinic, 5890 West 13th Street, Suite 101, Greeley, CO 80634; and (2) Dr. Ronald Quenzer, MD, Banner Health Clinic, 1801 16th Street, Greeley, CO 80631.

See **Exhibit 1,** Defendant's Amended Designation of Non-Parties at Fault pursuant to C.R.S. § 13-21-111.5(3)(b).

Defendant seeks to present the testimony of an orthopedic surgeon, Richard D. Scott, M.D. apparently to testify in support of its nonparty designations of Dr. Sanderford, an orthopedic surgeon who performed the initial total knee replacement surgery in June 2017, and of Michelle Remley, who is Dr. Sanderford's Physician Assistant. Dr. Scott's report states:

> I was asked to review the records in the case for the purposes of rendering an opinion on the causes of Mr. Kelly's alleged injuries, particularly his "excessive bleeding and failure of his surgical wound to heal", and what necessitated the additional surgeries following his initial total knee replacement surgery on 6-20-17."

*See* **Exhibit 2**, Dr. Scott's November 16, 2020 expert report and C.V.   Dr. Scott also submitted a Supplemental expert report on December 16, 2020 that is attached as **Exhibit 3**.  Dr. Scott's reports identify two types of inappropriate opinions that must not be allowed.

First, Dr. Scott, as an orthopedic surgeon, cannot testify as to issues of negligence concerning a family practice physician at Sunrise Community Health monitoring and managing a patient's postoperative anticoagulation regimen.  A physician specializing in orthopedic surgery, like Dr. Scott, lacks the necessary qualifications to satisfy the requirements of Colo. Rev. Stat. § 13-64-401 and offer testimony on "issues of negligence" against a family practice physician.  Such unqualified expert opinion testimony is irrelevant, unreliable, and inadmissible under Federal Rule of Evidence 702.  The specialty of orthopedic surgery is very different from the specialty of family practice, and Colorado law prohibits Dr. Scott from testifying about issues of negligence concerning postoperative monitoring and management of bridge therapy at trial in this matter.  (It is worth noting that Dr. Scott's interpretation of his role as an expert witness in this case is to testify about the cause of Plaintiff Ronald Kelly's injuries.  He does not state that he was requested to testify about negligence issues for any provider.)

4

Second, Dr. Scott frequently criticizes the "Orthopaedic office" or "Orthopaedic team" rather than a specific provider in his two reports. Pursuant to the Corporate Practice of Medicine Doctrine, a medical corporation is not vicariously liable for any malpractice by its physicians, *nor does it owe a duty* to the patient to assume any medical responsibilities that its physicians failed to fulfill. *Smith v. Surgery Ctr. at Lone Tree, LLC*, 2020 COA 145, P6. Dr. Scott cannot be allowed to opine on the alleged negligence of the "Orthopaedic office" or the "Orthopaedic team" where a Colorado statute specifically disclaims that such an entity can owe a duty of care under Colorado law.

## I.   THE TENTH CIRCUIT APPLIES STATE SUBSTANTIVE LAW TO CLAIMS BROUGHT PURSUANT TO THE FTCA

The FTCA's waiver of sovereign immunity provides that the United States may only be held liable "in the same manner and to the same extent as a private individual under like circumstances." 28 U.S.C. § 2674 (2010). Stated another way, the FTCA looks to "the law of the place where the act or omission occurred" to determine whether, under the circumstances, "the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred." 28 U.S.C. § 1346(b) (2010).

In interpreting this language, the Supreme Court has consistently found that a state's substantive law, not procedural, applies in actions brought under the FTCA. *See FDIC v. Meyer*, 510 U.S. 471, 478 (1994) ("[W]e have consistently held that § 1346(b)'s reference to the 'law of the place' means law of the State—the source of substantive liability under the FTCA.") State substantive law applies to suits brought against the United States under the FTCA. *See* 28 U.S.C. § 1346(b)(1).

"The FTCA provides that the United States shall be liable under state tort law only 'in the same manner and to the same extent as a private individual under like circumstances.'" *Hill v.*

*SmithKlineBeecham, Corp.*, 393 F.3d 1111, 1117 (10th Cir. 2004) (quoting *Nationwide Mut. Ins. Co. v. United States*, 3 F.3d 1392, 1396 (10th Cir. 1993)). Thus, the Tenth Circuit has recognized that Colorado law applies to suits brought against the United States under the FTCA. *Hill*, 393 F.3d at 1117-18 ("State substantive law applies to suits brought against the United States under the FTCA").

## II.     COLORADO'S HCAA IS SUBSTANTIVE LAW

The Colorado General Assembly specifically enacted the HCAA to define the substantive right under Colorado law to bring a medical malpractice action. Colo. Rev. Stat. § 13-64-102. The Legislative Declaration to the HCAA provides:

> The general assembly determines and declares that it is in the best interests of the citizens of this state to assure the continued availability of adequate health care services to the people of this state by containing the significantly increasing costs of malpractice insurance for medical care institutions and licensed medical care professionals, and that such is rationally related to a legitimate state interest. To attain this goal and in recognition of the exodus of professionals from health care practice or from certain portions or specialties thereof, **the general assembly finds it necessary to enact this article limited to the area of medical malpractice to preserve the public peace, health, and welfare**.

Colo. Rev. Stat. § 13-64-102(1) (Emphasis added).

To further these goals, the HCAA requires a witness to be a licensed physician "to testify as an expert witness concerning issues of negligence in any medical malpractice action or proceeding against a physician." Colo. Rev. Stat. § 13-64-401(emphasis added). This HCAA provision on expert testimony is not merely a procedural rule of litigation, it is a substantive part of a medical malpractice claim under Colorado law.

The Tenth Circuit recognizes that substantive enactments like the HCAA, such as Colorado's certificate of review statute, Colo. Rev. Stat. § 13-20-602, apply in diversity and FTCA cases. The Tenth Circuit has recognized that Colorado's substantive laws defining the contours of

6

professional negligence claims in Colorado, such as Colorado's certificate of review statute, apply in diversity and FTCA cases.

For example, in *Trierweiler v. Croxton Trench Holding Corp.*, a diversity jurisdiction case, the Tenth Circuit recognized Colorado's certificate of review statute applied because "[t]he balance of interests apparent in the legislative scheme … [shows] that the Colorado certificate of review statute manifests 'a substantive decision by that State.'" 90 F.3d 1523, 1541 (10th Cir. 1996) (quoting *Walker v. Armco Steel Corp.*, 446 U.S. 740, 751 (1980)).

And in *Hill*: "[W]e conclude that the Colorado review statute is applicable to professional negligence claims brought against the United States under the FTCA." *Hill*, 393 F.3d at 1111; *Kikumura v. Osagie*, 461 F.3d 1269, 1297 (10th Cir. 2006) (upholding application of Certificate of Review statute in a FTCSA case). As the *Hill* Court reasoned, to hold otherwise would effectively place the United States in a different position than a private party defending against a claim of medical negligence under Colorado law, "thereby undermining the conditions precedent to the United States' waiver of sovereign immunity in the FTCA." 393 F.3d at 1118.

The dual policies of the *Erie* rule, "discouragement of forum-shopping and avoidance of inequitable administration of the laws," militate toward applying the HCAA in federal court. *Hanna v. Plumer*, 380 U.S. 460, 468 (1968). Declining to apply the HCAA to medical malpractice actions brought in the federal court when the HCAA would apply to similar actions brought in state court, where the HCAA applies, would result in substantially different outcomes in state and federal courts.

Undoubtedly, the Defendant in this case will take the position that the statutory damage caps on liability created by the HCAA in Colo. Rev. Stat. § 13-64-302 apply to this medical malpractice action brought under the FTCA. For example, in *Haceesa v. United States,* the Tenth

7

Circuit held a medical malpractice action based on care in New Mexico was subject to New Mexico's statutory recovery cap for medical malpractice cases, N.M. Stat. Ann. § 41-5-6(A). 309 F.3d 722 (10th Cir. 2002). Whether the recovery cap applied depended on whether the "FTCA suit against the United States, arising from the actions of a nurse and health care administrators, [was] a suit against a 'health care provider' within the meaning of the recovery cap statute." *Id.* at 728. "[B]ecause an analogous suit against a private hospital based on the actions of employees who are not themselves health care providers would be subject to the recovery cap," the FTCA suit against the Government was also subject to the cap. *Id.* at 279-230.

If the HCAA applies in state but not federal court, inequitable results would occur based on forum selection considerations. As the HCAA is a substantive law of Colorado, it must apply in actions brought under the FTCA.

### III.     **COLORADO'S CORPORATE PRACTICE OF MEDICINE STATUTE COLO. REV. STAT. § 12-240-138 IS SUBSTANTIVE LAW**

Under the Corporate Practice of Medicine Doctrine, a medical corporation is not vicariously liable for any malpractice by its physicians, *nor does it owe a duty* to the patient to assume any medical responsibilities that its physicians fail to fulfill. *Smith v. Surgery Ctr. at Lone Tree, LLC*, 2020 COA 145, P6. The licensed provider treating the patient owes the duty. *Id*. A health care entity cannot exercise control over the physician's independent professional judgment concerning the practice of medicine, diagnosis, or treatment and is not liable for their conduct. *See* Colo. Rev. Stat. § 12-240-138(1)(f). Put simply, "Corporations shall not practice medicine." Colo. Rev. Stat. § 12-240-138(6)(a). "[I]t is impossible for a fictional entity, a corporation, to perform medical actions or be licensed to practice medicine." *Estate of Harper v. Denver Health & Hosp. Auth.*, 140 P.3d 273, 275 (Colo. 2006).

8

"Because interference with the physician-patient relationship is precisely what the corporate practice of medicine doctrine is intended to prevent" the doctrine "shields corporations from vicarious liability for the negligent acts of their physician employees." *Harper*, 140 P.3d at 275; *Smith*, 2020 COA 145 at P24.

Like Colorado's HCAA and its certificate of review requirement, this mandate from Colorado's General Assembly is an attempt at preserving "public health, safety, and welfare." Colo. Rev. Stat. § 12-240-102. Therefore, Colorado's statutory corporate practice of medicine doctrine is a substantive law of Colorado and applies in actions brought under the FTCA.

### IV. THE COURT MUST STRIKE CERTAIN OPINIONS OF DR. SCOTT

**1. DR. SCOTT MUST NOT BE ALLOWED TO OPINE ON "ISSUES OF NEGLIGENCE" CONCERNING THE POSTOPERATIVE MONITORING AND MANAGEMENT OF BRIDGE THERAPY BY THE FAMILY MEDICINE PROVIDERS AT SUNRISE COMMUNITY HEALTH**

In medical malpractice cases where the expert seeks to provide opinion testimony concerning issues of negligence, the HCAA requires a showing that the proposed expert is a physician substantially familiar with applicable standards of care and practice as they relate to the act or omission which is the subject of the claim:

> No person shall be qualified to testify as an expert witness concerning issues of negligence in any medical malpractice action or proceeding against a physician unless he not only is a licensed physician but can demonstrate by competent evidence that, as a result of training, education, knowledge, and experience in the evaluation, diagnosis, and treatment of the disease or injury which is the subject matter of the action or proceeding against the physician defendant, he was **substantially familiar with applicable standards of care and practice as they relate to the act or omission which is the subject of the claim on the date of the incident**.

Colo. Rev. Stat. § 13-64-401.

Dr. Scott is an orthopedic surgeon. As such, he is not substantially familiar with the standards of care and practice applicable to family medicine physicians managing a patient's

9

postoperative anticoagulation regime. Dr. Scott is an orthopedic surgeon who specializes in joint replacement. **Exhibit 2** at 1. In his report, he details his exclusive training in joint replacement surgery, particularly knee arthroplasty, or knee replacement surgery. *Id.*

Dr. Scott is not trained in family medicine or the postoperative monitoring and management of "bridge therapy" and therefore he should not be allowed to opine on "issues of negligence" regarding the medical providers' bridge therapy at Sunrise Community Health pursuant to Colo. Rev. Stat. § 13-64-401.

Despite this, Dr. Scott's report identifies standard of care opinions about the family medicine providers' management of the anticoagulation medication at Sunrise Community Health.

- "[I]t is my expert opinion that the wound complication and subsequent infection that occurred after Mr. Kelly's index Total Knee Replacement on 6-20-17, as well as the need for further surgery following his I&D on 7-11-17 were not due to mismanagement of his anticoagulation regimen … or his treatment by the Sunrise providers." Dr. Scott's Initial Expert Report dated November 16, 2020, page 4.
- "In summary, it is my opinion that the wound complications and subsequent infection that occurred after Mr. Kelly's index surgery of 6-20-17 and the need for additional surgeries after his I&D of 7-11-17 were not caused by mismanagement of his anticoagulation regimen by the providers at Sunrise." *Id.*, page 6.
- "[I]t is not reasonable to presume that a patient's primary care physician would undertake to obtain and review notes from outside orthopaedic office visits." Dr. Scott's Supplemental Expert Report dated December 16, 2020, page 2.
- I do not believe that Mr. Kelly's poor wound healing and need for subsequent surgeries are attributable to Mr. Kelly's anticoagulation regimen or his treatment as Sunrise. *Id.*

- "I do disagree with any implication that Mr. Kelly's excessive bleeding was caused by the management of his warfarin and Lovenox by the Sunrise providers." *Id.*, page 3.

- "[I]t is my opinion that the wound complications and subsequent infection that occurred after Mr. Kelly's index surgery of 6-20-17 and the need for additional surgeries after his I&D of 7-11-17 were not caused by mismanagement of his anticoagulation regimen by the providers at Sunrise, and the medical records do not reflect that Mr. Kelly's anticoagulation regimen was the cause of his immediate post-operative hematoma and the subsequent wound healing issues that he experienced." *Id.*

What Dr. Scott believes about the management and care provided by the family medicine providers at Sunrise during Plaintiff Ronald Kelly's anticoagulation regime, or "bridge therapy," is inadmissible under Colorado law. He is not trained in nor does he have experience in family medicine, and the standards of care and practice between family medicine and orthopedic surgery are not substantially similar. While Dr. Scott may opine about issues relating to orthopedic surgery, he is not qualified to opine about the care and treatment provided by the Sunset primary care team. Any testimony from Dr. Scott about the Sunrise primary care team goes beyond his expertise and training and, under Colorado law, must not be allowed.

2. **DR. SCOTT MUST NOT BE ALLOWED TO OPINE GENERALLY THAT THE ORTHOPEDIC OFFICE OR ORTHOPEDIC TEAM WERE NEGLIGENT**

Dr. Scott cannot be allowed to opine on the alleged negligence of the Orthopedic office or Orthopedic team because Colorado law specifically disclaims that a medical business entity can owe a duty of care. Put simply, "Corporations shall not practice medicine." Colo. Rev. Stat. § 12-240-138(6)(a). "[I]t is impossible for a fictional entity, a corporation, to perform medical actions or be licensed to practice medicine." *Harper*, 140 P.3d at 275. "Because interference with the

11

physician-patient relationship is precisely what the corporate practice of medicine doctrine is intended to prevent" the doctrine "shields corporations from vicarious liability for the negligent acts of their physician employees." *Id.*; *Smith*, 2020 COA 145 at P24.

Nonetheless, Dr. Scott's report contains opinions regarding alleged negligence by the "Orthopaedic office" and the "Orthopaedic team:"

- "The records in this case reveal that the foregoing steps were not taken by Mr. Kelly's <u>Orthopaedic team</u> in the weeks following his index surgery." Dr. Scott's Initial Expert Report dated November 16, 2020, page 5.
- "The patient's joint hematoma which was apparently early after the index procedure of 6-20-17 and that formed before Coumadin dosage was re-instituted could have been treated more appropriately by the <u>Orthopaedic team</u>." *Id.*
- "It is my opinion that the <u>Orthopaedic office</u> should have taken this step on 7-5-17." *Id.*, page 6.
- "[I]t would have been incumbent upon the <u>Orthopaedic office</u> to alert other providers regarding concerning symptoms that they observed." Dr. Scott's Supplemental Expert Report dated December 16, 2020, page 2.
- "[T]hat lapse constituted a breach of the standard of care by the <u>office</u> and likely contributed to Mr. Kelly's injuries." *Id.*, page 4.

Dr. Sanderson and PA Remley are the only orthopedic providers identified in Defendant's Designation of Non-Parties at Fault. Notably, another orthopedic care provider, Dr. Steven Sides was not so designated. Dr. Scott's testimony about the "Orthopaedic office" or "Orthopaedic team" must not be allowed as only specific providers can owe medical duties. Dr. Scott must be limited to expressing opinions he is permitted to give about specific orthopedic providers.

## CONCLUSION

The challenged opinions of Dr. Scott are exactly the type of opinions that the HCAA was designed to exclude. Dr. Scott lacks the training, knowledge, skills, education, and experiences necessary to walk in the shoes of family medicine specialists administering a patient's postoperative anticoagulation regime. Because Dr. Scott lacks the statutory qualifications necessary to provide this testimony in this case, his challenged opinions should be prohibited at trial.

Furthermore, Dr. Scott's generalized opinions about alleged negligence of the business entity, the office, or the team must not be allowed because only specific providers may owe medical duties to a patient. Dr. Scott must be limited to disclosed opinions about specific orthopedic providers. Such opinions must be further limited to disclosed opinions about orthopedic providers Dr. Sanderford and PA Michelle Remley, since Dr. Steven Sides has not been designated as a non-party at fault.

Respectfully submitted this 24th day of March 2021.

Respectfully Submitted,

s/ John O. Martin
John O. Martin
Martin Law Firm, LLC
7350 East Progress Place, Suite 100
Greenwood Village, CO 80111
Telephone: (303) 734-7150
E-Mail: john@jomlegal.com
Attorney for Plaintiffs

CERTIFICATE OF SERVICE

I hereby certify that on March 24, 2021 a true and correct copy of the foregoing was served to all counsel via the United States District Court's CM-ECF Service:

**Elizabeth Hagerty**
Assistant United States Attorney
United States Attorney's Office | District of Colorado
1801 California Street, Suite 1600
Denver, CO  80202
Phone:  (303) 454-0101
Email:     elizabeth.hagerty@usdoj.gov