IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 19-cv-03630-NYW

RONALD KELLY AND
SHELLI KELLY,
  Plaintiffs

V.

UNITED STATES OF AMERICA,
  Defendant

---

**PLAINTIFFS' MOTION TO STRIKE CERTAIN EXPERT TESTIMONY OF KEITH B. ARMITAGE, M.D., PURSUANT TO FEDERAL RULE OF EVIDENCE 702**

---

COME NOW Plaintiffs Ronald Kelly and Shelli Kelly, by and through their attorneys, Martin Law Firm, LLC, and hereby submit their Motion to Strike Certain Expert Testimony of Keith B. Armitage, M.D. under Federal Rule of Evidence 702.

### D.C.COLO.LCivR 7.1(a) CERTIFICATION

Undersigned counsel certifies under D.C.COLO.LCivR 7.1(a) that he conferred with counsel for Defendant, and counsel for Defendant stated that the United States opposes the requested relief.

### INTRODUCTORY SUMMARY

Defendant's expert witness Keith B. Armitage, M.D. is an infectious diseases physician who has apparently been disclosed to testify in support of the Defendant's Non-Party at Fault Designation of treating infectious diseases physician Ronald Quenzer, M.D. As an infectious diseases physician, Dr. Armitage is not substantially familiar with applicable standards of care and practice applicable to either family medicine or orthopedic surgery. (It should be noted that the specific applicable standards of care and practice herein for family medicine physicians relate to

the postoperative management of a patient who is undergoing "bridge therapy" involving Lovenox and Coumadin.) Under Colo. Rev. Stat. § 13-64-401, no person may "be qualified to testify as an expert witness concerning issues of negligence in any medical malpractice action or proceeding against a physician unless he not only is a licensed physician but can demonstrate by competent evidence that … he was substantially familiar with applicable standards of care and practice as they relate to the act or omission which is the subject of the claim on the date of the incident." Since Dr. Armitage is not "substantially familiar with applicable standards of care and practice" of family medicine or orthopedic surgery, he should not be allowed to opine on "issues of negligence" regarding family medicine or orthopedic surgery.

## INTRODUCTION

This is a medical malpractice action under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. § 2671 *et al.* This case arises from the postoperative management of Plaintiff Ronald Kelly's "bridge therapy" (involving anticoagulation medications), by the medical providers at the Sunrise Community Health system, a Federally Qualified Health Center. Plaintiff Ronald Kelly has a mechanical heart valve, which requires him to take the anticoagulant medication, Coumadin, for life. Plaintiff Ronald Kelly underwent a total knee replacement surgery in June 2017. Because of potential bleeding risks, the Coumadin had to be stopped prior to the surgery. To restart the Coumadin after the surgery and to reach a therapeutic Coumadin dose, a medical technique known as "bridge therapy" was utilized. In "bridge therapy" another anticoagulation medication, Lovenox, is administered postoperatively to a patient along with restarting the Coumadin. The Lovenox is then stopped when the Coumadin reaches a therapeutic level.

However, the combination of the two anticoagulant medications being administered at the same time greatly increases the risk of postoperative bleeding. Therefore, close monitoring and

management of the clotting times (using a blood test known as INR) and the Coumadin dose are required. Plaintiffs Ronald Kelly and his wife Shelli specifically contend two family medicine physicians at the Sunrise clinic, Samuel Davis, MD and Sean Filipovitz, MD, negligently failed to appropriately monitor and manage Plaintiff Ronald Kelly's bridge therapy following his surgery. As a result, Plaintiff Ronald Kelly remained on the two anticoagulant medications for an inappropriate and excessive time following the surgery. This caused him to suffer abnormal and excessive bleeding, infection, the need for subsequent surgeries, and related damages.

Defendant seeks to present the testimony of Dr. Armitage, whose report indicates he will testify about what contributed to the development of a prosthetic knee infection in Plaintiff Ronald Kelly's knee:

> At your request I have reviewed the medical records of Plaintiff Ronald Kelly to determine if the anticoagulation management by the Sunrise Community Health Clinics as well as other providers contributed to the development of a prosthetic knee infection in Mr. Ronald Kelly.

*See* **Exhibit 1**, Dr. Armitage's November 13, 2020 expert report and C.V.

However, Dr. Armitage's report indicates he has opinions about the care and treatment of other medical providers, including family medicine and orthopedic providers. As an infectious diseases physician, he is not qualified to testify as to issues of negligence concerning the practice of family medicine or orthopedic surgery. He lacks the necessary qualifications to satisfy the requirements of Colo. Rev. Stat. § 13-64-401 and offer testimony on "issues of negligence" against a family practice physician or an orthopedic surgeon. Such unqualified expert opinion testimony is irrelevant, unreliable, and inadmissible under Federal Rule of Evidence 702. The practice of infectious diseases is very different from the specialties of family medicine and orthopedic surgery, and Colorado law prohibits Dr. Armitage from testifying about issues of negligence concerning family medicine or orthopedic surgery at trial in this matter.

3

I. **THE TENTH CIRCUIT APPLIES STATE SUBSTANTIVE LAW TO CLAIMS BROUGHT PURSUANT TO THE FTCA**

The FTCA's waiver of sovereign immunity provides that the United States may only be held liable "in the same manner and to the same extent as a private individual under like circumstances." 28 U.S.C. § 2674 (2010). Stated another way, the FTCA looks to "the law of the place where the act or omission occurred" to determine whether, under the circumstances, "the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred." 28 U.S.C. § 1346(b) (2010).

In interpreting this language, the Supreme Court has consistently found that a state's substantive law, not procedural, applies in actions brought under the FTCA. *See FDIC v. Meyer*, 510 U.S. 471, 478 (1994) ("[W]e have consistently held that § 1346(b)'s reference to the 'law of the place' means law of the State—the source of substantive liability under the FTCA.") State substantive law applies to suits brought against the United States under the FTCA. *See* 28 U.S.C. § 1346(b)(1).

 "The FTCA provides that the United States shall be liable under state tort law only 'in the same manner and to the same extent as a private individual under like circumstances.'" *Hill v. SmithKlineBeecham, Corp.*, 393 F.3d 1111, 1117 (10th Cir. 2004) (quoting *Nationwide Mut. Ins. Co. v. United States*, 3 F.3d 1392, 1396 (10th Cir. 1993)). Thus, the Tenth Circuit has recognized that Colorado law applies to suits brought against the United States under the FTCA. *Hill*, 393 F.3d at 1117-18 ("State substantive law applies to suits brought against the United States under the FTCA").

II. **COLORADO'S HCAA IS SUBSTANTIVE LAW**

The Colorado General Assembly specifically enacted the HCAA to define the substantive right under Colorado law to bring a medical malpractice action. Colo. Rev. Stat. § 13-64-102. The Legislative Declaration to the HCAA provides:

> The general assembly determines and declares that it is in the best interests of the citizens of this state to assure the continued availability of adequate health care services to the people of this state by containing the significantly increasing costs of malpractice insurance for medical care institutions and licensed medical care professionals, and that such is rationally related to a legitimate state interest. To attain this goal and in recognition of the exodus of professionals from health care practice or from certain portions or specialties thereof, **the general assembly finds it necessary to enact this article limited to the area of medical malpractice to preserve the public peace, health, and welfare**.

Colo. Rev. Stat. § 13-64-102(1) (Emphasis added).

To further these goals, the HCAA requires a witness to be a licensed physician "to testify as an expert witness concerning issues of negligence in any medical malpractice action or proceeding against a physician." Colo. Rev. Stat. § 13-64-401(emphasis added). This HCAA provision on expert testimony is not merely a procedural rule of litigation, it is a substantive part of a medical malpractice claim under Colorado law.

The Tenth Circuit recognizes that substantive enactments like the HCAA, such as Colorado's certificate of review statute, Colo. Rev. Stat. § 13-20-602, apply in diversity and FTCA cases. The Tenth Circuit has recognized that Colorado's substantive laws defining the contours of professional negligence claims in Colorado, such as Colorado's certificate of review statute, apply in diversity and FTCA cases.

For example, in *Trierweiler v. Croxton Trench Holding Corp.*, a diversity jurisdiction case, the Tenth Circuit recognized Colorado's certificate of review statute applied because "[t]he balance of interests apparent in the legislative scheme … [shows] that the Colorado certificate of review statute manifests 'a substantive decision by that State.'" 90 F.3d 1523, 1541 (10th Cir. 1996)(quoting *Walker v. Armco Steel Corp.*, 446 U.S. 740, 751 (1980)).

And in *Hill*: "[W]e conclude that the Colorado review statute is applicable to professional negligence claims brought against the United States under the FTCA." *Hill*, 393 F.3d at 1111; *Kikumura v. Osagie*, 461 F.3d 1269, 1297 (10th Cir. 2006) (upholding application of Certificate of Review statute in a FTCSA case). As the *Hill* Court reasoned, to hold otherwise would effectively place the United States in a different position than a private party defending against a claim of medical negligence under Colorado law, "thereby undermining the conditions precedent to the United States' waiver of sovereign immunity in the FTCA." 393 F.3d at 1118.

The dual policies of the *Erie* rule, "discouragement of forum-shopping and avoidance of inequitable administration of the laws," militate toward applying the HCAA in federal court. *Hanna v. Plumer*, 380 U.S. 460, 468 (1968). Declining to apply the HCAA to medical malpractice actions brought in the federal court when the HCAA would apply to similar actions brought in state court, where the HCAA applies, would result in substantially different outcomes in state and federal courts.

Undoubtedly, the Defendant in this case will take the position that the statutory damage caps on liability created by the HCAA in Colo .Rev. Stat. § 13-64-302 apply to this medical malpractice action brought under the FTCA. For example, in *Haceesa v. United States,* the Tenth Circuit held a medical malpractice action based on care in New Mexico was subject to New Mexico's statutory recovery cap for medical malpractice cases, N.M. Stat. Ann. § 41-5-6(A). 309 F.3d 722 (10th Cir. 2002). Whether the recovery cap applied depended on whether the "FTCA suit against the United States, arising from the actions of a nurse and health care administrators, [was] a suit against a 'health care provider' within the meaning of the recovery cap statute." *Id.* at 728. "[B]ecause an analogous suit against a private hospital based on the actions of employees who are

6

not themselves health care providers would be subject to the recovery cap," the FTCA suit against the Government was also subject to the cap. *Id.* at 279-230.

If the HCAA applies in state but not federal court, inequitable results would occur based on forum selection considerations. As the HCAA is a substantive law of Colorado, it must apply in actions brought under the FTCA.

### III. DR. ARMITAGE MUST NOT BE ALLOWED TO OPINE ON "ISSUES OF NEGLIGENCE" CONCERNING FAMILY MEDICINE OR ORTHOPEDIC SURGERY

In medical malpractice cases where the expert seeks to provide opinion testimony concerning issues of negligence, the HCAA requires a showing that the proposed expert is a physician substantially familiar with applicable standards of care and practice as they relate to the act or omission which is the subject of the claim:

> No person shall be qualified to testify as an expert witness concerning issues of negligence in any medical malpractice action or proceeding against a physician unless he not only is a licensed physician but can demonstrate by competent evidence that, as a result of training, education, knowledge, and experience in the evaluation, diagnosis, and treatment of the disease or injury which is the subject matter of the action or proceeding against the physician defendant, he was **substantially familiar with applicable standards of care and practice as they relate to the act or omission which is the subject of the claim on the date of the incident**.

Colo. Rev. Stat. § 13-64-401.

Dr. Armitage is an infectious diseases physician. As such, he is not substantially familiar with the standards of care and practice applicable to family medicine or orthopedic surgery. Dr. Armitage is not trained in family medicine or orthopedic surgery and lacks the necessary qualifications to satisfy the requirements of Colo. Rev. Stat. § 13-64-401 and offer testimony on "issues of negligence" against a family medicine physician or an orthopedic surgeon. (Again, the specific family medicine standards of care issues in this case pertain to the postoperative

management and monitoring of "bridge therapy" using the anticoagulation medications Lovenox and Coumadin.)

Dr. Armitage's proposed testimony relating to opinions about family medicine or orthopedic surgery is inadmissible under Colorado law. He is neither trained in, nor does he have experience in, family medicine or orthopedic surgery, and the standards of care and practice in the specialty of infectious diseases are not substantially similar to the standards of care and practice in the specialties of either family medicine or orthopedic surgery. Any testimony from Dr. Armitage about "issues of negligence" concerning family medicine or orthopedic surgery goes beyond his expertise and training and, under Colorado law, must not be allowed.

## CONCLUSION

The challenged opinions of Dr. Armitage are exactly the type of opinions that the HCAA was designed to exclude. Dr. Armitage lacks the training, knowledge, skills, education, and experiences necessary to walk in the shoes of family medicine or orthopedic surgery specialists. Because Dr. Armitage lacks the statutory qualifications necessary to provide this testimony in this case, he must not be allowed to testify as to "issues of negligence" regarding family medicine or orthopedic surgery.

Respectfully submitted this 24th day of March 2021.

Respectfully Submitted,

s/ John O. Martin
John O. Martin
Martin Law Firm, LLC
7350 East Progress Place, Suite 100
Greenwood Village, CO 80111
Telephone: (303) 734-7150
E-Mail: john@jomlegal.com
Attorney for Plaintiffs

CERTIFICATE OF SERVICE

I hereby certify that on March 24, 2021 a true and correct copy of the foregoing was served to all

counsel via the United States District Court's CM-ECF Service:

**Elizabeth Hagerty**
Assistant United States Attorney
United States Attorney's Office | District of Colorado
1801 California Street, Suite 1600
Denver, CO  80202
Phone:  (303) 454-0101
Email:    elizabeth.hagerty@usdoj.gov